# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA WATSON, ) | |
| JOHN MOON, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 12-1156 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| SCOTLANDYARD SECURITY ) | |
| SERVICES, LTD., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons stated below, Defendant's Motion for Summary Judgment (Doc. 13) will be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Pamela Watson and John Moon allege in their complaint (Doc. 1) that their former employer, ScotlandYard Security Services ("ScotlandYard"), unlawfully discriminated against them in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. § 951 *et seq*.

Defendant filed a Motion for Summary Judgment (Doc. 13), arguing that ScotlandYard's arbitration policy mandates arbitration as the exclusive remedy for Plaintiffs' claims. In support of its Motion for Summary Judgment, Defendant has provided the Court with a copy of its "Employee Manual," which contains the arbitration policy at issue. See Def.'s Decl. (Doc. 19-1). That policy provides that arbitration "shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment by ScotlandYard

Security Services or you, and employees in any court or any forum can bring no other action." Id. at p. 6. The policy specifies that this arbitration policy applies to claims of "unlawful discrimination or harassment." The manual indicates that employees automatically agree to the arbitration policy by "simply accepting or continuing [their] employment." Id.

However, the parties disagree as to whether Plaintiffs Watson and Moon actually received a copy of the manual containing the arbitration policy. Plaintiff Watson signed a form titled "Receipt and Acknowledgement of Scotland Security Services Ltd Employee Manual," which stated "I also acknowledge I have read and understood the Arbitration Policy contained in this Employee Manual and I agree to abide by the policy." Def.'s Appx., Ex. A (Doc. 16-1). However, Plaintiff Watson declares that she never actually received a copy of the manual containing the policy and that she mistakenly believed the reference to "arbitration" on the form to mean the company's internal grievance procedure. Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. 2 at ¶¶ 11-12 (Doc. 21-3). Defendant argues that Plaintiff Moon also signed an acknowledgement form, but Defendant's exhibit only shows Moon's printed name on the form, not his signature. See Def.'s Appx., Ex. B (Doc. 16-1). Moon denies signing or printing his name on the form. Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. 1 at ¶ 7 (Doc. 21-2). Moon likewise declares that he never received a copy of the manual and was never aware of the arbitration policy. Id. at ¶¶ 4-6.

## ANALYSIS

Before compelling arbitration pursuant to the Federal Arbitration Act ("FAA"), a court must determine that: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). While the FAA reflects a "strong federal policy in favor of the resolution of disputes through arbitration," this presumption "does not apply to the determination

of whether there is a valid agreement to arbitrate between the parties." Id. (internal citations omitted).

When determining whether a valid agreement to arbitrate exists, a court looks to the "ordinary state-law principles that govern the formation of contracts." Id. (internal citations omitted). Pennsylvania law requires the following for contract formation: (1) mutual manifestation of an intention to be bound; (2) sufficiently definite terms; and (3) consideration. Id. Here, because the Court finds that a material issue of fact exists as to whether the parties mutually manifested an intention to be bound, the Court will not consider whether the other two prongs of this test have been met.

Plaintiffs Watson and Moon have provided the Court with signed declarations, in which they deny that they ever received a copy of the employment manual containing Defendant's arbitration policy. See Pl.'s Resp. to Def.'s Stmt. of Facts (Doc. 21). While Plaintiff Watson signed an acknowledgement form indicating she agreed to the policy, she declares that she was never actually given a copy of the policy, nor understood what the reference to "arbitration" meant. Id. at Ex. 2. While the record contains an acknowledgement form with Plaintiff Moon's printed name, the form does not contain his signature and Plaintiff Moon denies that he signed or printed his name on the form. Further, Plaintiffs declare that during their employment with ScotlandYard, they never witnessed a new employee being informed about or given a copy of an arbitration policy. Id. at Ex. 1-2.

In a nearly identical case, Quiles v. Financial Exchange Co., 879 A.2d 281 (Pa. Super. Ct. 2005), the Pennsylvania Superior Court held that an employee who was never given a copy of her employer's arbitration policy could not have accepted the terms of the agreement, and therefore no valid agreement to arbitrate existed. Id. at 283. Just like in the present case, the

Plaintiff in Quiles signed an acknowledgement form stating she read and received the company handbook. Id. at 283-84. The form in Quiles, like the form here, also made a specific reference to the arbitration policy. The Court found that without receiving the actual policy, the employee was "unable to knowingly and voluntarily waive all other means of dispute resolution." Id. at 286. Thus, the Court held that there was no contract between the parties and therefore no grounds to compel arbitration. Id. at 288.

Similarly, Plaintiffs Watson and Moon cannot have entered into a valid contract with ScotlandYard if they had never actually received the employee manual that contained the arbitration policy. Therefore, a genuine issue of material fact exists as to whether there is a valid agreement to arbitrate and Defendant's Motion for Summary Judgment must be denied.

## II. ORDER

For the reasons stated above, the Court hereby orders that Defendant's Motion for Summary Judgment (Doc. 13) is **DENIED**.

IT IS SO ORDERED.


October 18, 2013                                s\Cathy Bissoon
                                                CATHY BISSOON
                                                UNITED STATES DISTRICT JUDGE


cc (via ECF email notification):

All Counsel of Record